IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY L. HANDS,       )<br>                              )<br>        Petitioner,          )<br>                              )<br>    vs.                       )<br>                              )<br>R. BARNES, Warden,    )<br>                              )<br>        Respondent.     )<br>_____ ) | No. C 09-4583 CRB (PR)<br><br>ORDER DENYING<br>PETITION FOR A WRIT OF<br>HABEAS CORPUS AND<br>DENYING CERTIFICATE OF<br>APPEALABILITY |

Petitioner, a state prisoner incarcerated at the California Correctional Center in Susanville, filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254. The court ordered respondent to show cause why the petition should not be granted. Respondent filed an answer and a supporting memorandum of points and authorities addressing the merits of the petition. Petitioner filed a traverse. Having reviewed the papers and the underlying record, the court concludes that petitioner is not entitled to habeas corpus relief and will DENY the petition.

**FACTUAL BACKGROUND**

The California Court of Appeal summarized the facts of the crime as follows. This summary is presumed correct. Hernandez v. Small, 282 F.3d 1132, 1135 n.1 (9th Cir. 2002); 28 U.S.C. § 2254(e)(1).

> On April 4, 2005, around 11:10 p.m., officers responded to a carjacking report at Aldengate Street and Hesperian Boulevard in Hayward. The victim was a 78-year-old man who was carjacked by a stranger, later identified as the appellant. We note that there are variations in the victim's account of how the carjacking occurred. We

also note that the victim is a Tongan man with limited English abilities. Because initial interviews with police officers were conducted only in English, the victim appears to have misunderstood some of the questions that were asked and failed to give officers an accurate account of the carjacking. What follows is the account of the carjacking using information the victim gave the police with the help of an interpreter.

On April 4, 2005, the victim became lost while driving back home from church. The victim lived with his daughter and was driving her blue 1990 Nissan Stanza. He turned into a Valero gas station at the corner of Hesperian and A Streets in Hayward to obtain directions. The victim tried to ask a store employee how to find "Kelly Road." He returned to his car after he was unable to understand the directions he received. When he was back in the car, an African-American male approached the vehicle from the passenger side. This man was later identified as the appellant. Appellant told the victim that he could show him Kelly Road, but that appellant would have to come along to give him the directions. The victim agreed and after getting into the vehicle, appellant proceeded to give the victim driving directions.

The victim testified that he became nervous while driving with the appellant. After driving about two miles, appellant told the victim to pull over to the side of the road. Appellant claimed he told the victim to pull over because the victim was "driving recklessly" and "endangering our safety." After the victim pulled over, appellant made a pushing movement on the victim with one hand and took the keys out of the ignition. Appellant then got out of the vehicle and walked around to the driver's side. The victim got out of the vehicle and appellant grabbed the front of his jacket and shook him. The victim was frightened and fled down the street, leaving the vehicle and car keys behind. When he arrived at a second Valero gas station, a customer at the station called 911.

After the police arrived at the gas station and spoke with the victim, the officers went to the location where he had left the car, but it was no longer there. The following day, April 5, 2005, the vehicle registration number (VIN number) of the carjacked vehicle was entered into the stolen vehicle system (SVS).

On April 7, 2005, officers responded to a call regarding a possible robbery in Alamo. Appellant was detained at the scene with two other men. The VIN number check was run on a vehicle at the scene, which appellant claimed was his. No exact match was found in the SVS. However, the SVS did return a description matching that of the vehicle, but with the VIN number being off by one letter or number. Appellant was not arrested.

On April 15, 2005, appellant was pulled over in Oakland for traffic violations. He was driving a blue Nissan Stanza that did not have front or rear license plates and had a cracked front windshield. Appellant could not produce a driver's license or identification. During the stop, the officer noticed a ziplock bag in the ashtray which

2

> appeared to contain marijuana seeds. Appellant was detained and searched. A small ziplock bag of marijuana was found in one of appellant's socks. Another officer ran a records search using appellant's name and discovered that he was on probation. A VIN number check was run and returned a match reporting the vehicle as stolen in a carjacking. Appellant was arrested and taken into custody.
>
> On April 19, 2005, the primary investigating officer contacted the victim and provided him with a photo line-up. The victim was unable to positively identify appellant.
>
> When appellant was arrested by the police on April 15, 2005, he claimed that the vehicle was his and that he had bought it from another person. That same day, in his interview with the investigating officer, appellant initially maintained that he had purchased the car from another man. Later in the interview, appellant changed his story and said that he had met the victim at the gas station. He claimed that he had only meant to help the victim get home, but that the victim's driving had been dangerous so appellant had told him to pull over. Appellant also claimed that the victim had told him that he could take the car, and that appellant had intended to return the vehicle.

People v. Hands, 2008 WL 4412254, at 1-2 (Cal. Ct. App. Sept. 30, 2008).

## PROCEDURAL BACKGROUND

On August 10, 2005, the Alameda County District Attorney filed an information charging petitioner with one count of carjacking, Cal. Pen. Code § 215(a). Petitioner had several prior convictions which were added as prison term enhancements. After petitioner withdrew his time waiver, a motion to dismiss was granted on December 19, 2006 for failure to give petitioner a speedy trial. That same day, charges were refiled with two additional enhancements for a violent crime on the vulnerable (Pen. Code, § 667.9(a)), and for a crime against the elderly (Pen. Code, § 1203.09(f)).

A preliminary hearing was held on January 3, 2007. At the hearing, petitioner's motion to dismiss the new enhancements based on a claim of vindictive prosecution was denied. An amended information, filed January 17, 2007, charged petitioner with one count of carjacking with two enhancements for crimes against

3

the vulnerable and the elderly. Petitioner's prior convictions were still included as prior prison term enhancements.

On March 9, 2007, the prosecution filed a motion to amend the information to include a second count of violation of Vehicle Code section 10851(a), which was granted five days later. On June 22, 2007, petitioner filed a motion to dismiss the information for vindictive prosecution, which was denied.

Jury selection began on July 17, 2007. On July 25, 2007, petitioner and prosecution agreed to a plea offer of 17 years, and petitioner changed his plea from not guilty to no contest to one count of carjacking. He stated that he did not want to return to court and gave up his right to wait for sentencing until after a probation report was issued. Sentencing was conducted that same day. Petitioner gave up his right to be present for the review date and the setting of restitution.

The court accepted the new plea of no contest, and petitioner was found guilty of one count of carjacking (Pen. Code, § 215(a)). The court found that petitioner had suffered two prior convictions and found true two enhancement allegations for committing a violent crime on the vulnerable and against the elderly. The balance of the information and other allegations were stricken or dismissed. Petitioner was sentenced to 17 years in state prison, ordered to pay $400 restitution, and given 952 days credit for time served, which included 828 actual days in custody and 124 days of good time/work credit.

Petitioner unsuccessfully appealed his conviction to the California Court of Appeal but did not seek further direct review from the Supreme Court of California. He later filed a petition for a writ of habeas corpus in the Supreme Court of California, raising the same claims raised here. It was denied on May 13, 2009. Petitioner filed the instant matter on September 28, 2009.

4

**DISCUSSION**

**I.      Standard of Review**

This court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'reasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application

must also be unreasonable." Id. at 411. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409.

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts, and only those holdings need be "reasonably" applied. Id.

## II.  Legal Claims

### A. Denial of Presentence Credits

Petitioner claims that he was denied custody credits in the calculation of his sentence when the trial court limited his good time/work time credit to 15 percent of his pre-sentence confinement. Petition at 6. If a state prisoner's time credits have been improperly computed, he may have a claim for denial of due process, see Haygood v. Younger, 769 F.2d 1350, 1355-58 (9th Cir. 1985), which generally may only be remedied by way of a petition for a writ of habeas corpus, see Young v. Kenny, 907 F.2d 874, 876-78 (9th Cir. 1990). Petitioner's claim here, however, is without merit.

As noted above, petitioner pled no contest and was found guilty of one count of carjacking in violation of Penal Code section 215(a). In its sentencing, the trial court applied Penal Code section 2933.1(a), which provides that "any person who is convicted of a felony offense listed in subdivision (c) of Section 667.5 shall accrue

//

no more than 15 percent of worktime credit, . . . ." Carjacking is one of the listed section 667.5(c) felony offenses. See Cal. Penal Code § 667.5(c)(17).

Petitioner argues that the court should have applied Penal Code section 4019 in calculating pre-sentence credit. Petition at 4, 6, 14. Petitioner's argument is unavailing. Petitioner claims that section 4019 "states the 15% limits should not accrued [sic] until defendant is placed in the Department of Corrections." Id. at 14. But section 4019 contains no such provision. Rather, section 4019 permits one day of credit for every six days of pre-sentence confinement in a city or county jail, industrial farm, or road camp – essentially 16.7% credit. Cal. Penal Code §§ 4019(a)(4), 4019(b). Section 2933.1, under which petitioner was sentenced, clearly states that credit shall not exceed 15 percent of the actual period of confinement "*[n]otwithstanding Section 4019* or any other provision of the law." Cal. Penal Code §2933.1(c) (emphasis added).

Petitioner is not entitled to federal habeas relief on his due process claim. It simply cannot be said that the state courts' denial of his pre-sentence credits claim was contrary to, or an unreasonable application of, clearly established federal law. See 28 U.S.C. § 2254(d).

### B. Involuntary and Unknowing Plea

Petitioner claims that his guilty plea was involuntary and made without a full understanding of the way his prison term was to be computed. Specifically, petitioner claims that he would not have accepted the plea deal had it been clearly stated that he could not receive full pre-sentence worktime credit. Petition at 9, 14. He also claims that he was pressured into changing his plea and did so "under duress" when the judge threatened to bring in the jury. Id. at 13-14.

//

A defendant who pleads guilty may not collaterally challenge a voluntary and intelligent guilty plea entered into with the advice of competent counsel. United States v. Broce, 488 U.S. 563, 574 (1989); Mabry v. Johnson, 467 U.S. 504, 508 (1984). Nor may he collaterally attack his plea's validity merely because he made what turned out, in retrospect, to be a poor deal. Bradshaw v. Stumpf, 545 U.S. 175, 186 (2005). The only challenges left open in federal habeas corpus after a guilty plea is the voluntary and intelligent character of the plea and the adequacy of the advice of counsel. Hill v. Lockhart, 474 U.S. 52, 56-57 (1985); Tollett v. Henderson, 411 U.S. 258, 267 (1973).

Due process requires that a guilty plea be both knowing and voluntary because it constitutes the waiver of three constitutional rights: the right to a jury trial, the right to confront one's accusers, and the privilege against self-incrimination. Boykin v. Alabama, 395 U.S. 238, 243 (1969). It does not, however, require a state court to enumerate all the rights a defendant waives when he enters a guilty plea as long as the record indicates that the plea was entered voluntarily and understandingly. Rodriguez v. Ricketts, 798 F.2d 1250, 1254 (9th Cir. 1986); Wilkins v. Erickson, 505 F.2d 761, 763 (9th Cir. 1974). A habeas petitioner bears the burden of establishing that his guilty plea was not knowing and voluntary. Parke v. Raley, 506 U.S. 20, 31-34 (1992).

The long-standing test for determining the validity of a guilty plea is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Parke, 506 U.S. at 29 (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)). This requires a review of the circumstances surrounding the plea. Brady v. United States, 397 U.S. 742, 749 (1970). The totality of the circumstances includes "both the defendant's subjective state of mind and the constitutional acceptability of the external forces

inducing the guilty plea." Doe v. Woodford, 508 F.3d 563, 570 (9th Cir. 2007) (internal quotations and citations omitted). Of particular importance is that the defendant enter a guilty plea with sufficient awareness of the relevant circumstances and likely consequences, Brady, 397 U.S. at 748, and that he understand the law in relation to the facts, McCarthy v. United States, 394 U.S. 459, 466 (1969). A plea is "involuntary" if it is the product of threats, improper promises, or other forms of wrongful coercion, Brady, 397 U.S. at 754-55, and is "unintelligent" if the defendant is without the information necessary to assess intelligently "the advantages and disadvantages of a trial as compared with those attending a plea of guilty," Hill, 474 U.S. at 56.

Petitioner's claim that the sentencing court did not explain the computation of pre-sentence worktime credits is without merit. The record shows that at the time petitioner pled guilty, it was clearly stated that he could not receive full pre-sentence credit. Specifically, the following colloquy took place at petitioner's plea hearing:

> **The Court:** Now, is there anything else that I missed?
>
> **[Prosecution]:** Yes, because I don't believe it's on the record, that the time served is at 85 percent, and that includes his pre-plea credits --
>
> **[Petitioner]:** The law says no.
>
> **[Prosecution]:** -- as well as his other credits.
>
> **[Petitioner]:** The law says that doesn't start until you get to prison.
>
> **The Court:** No. Actually --
>
> **[Petitioner]:** I have it right here. I can show it to you, Your Honor.
>
> **The Court:** Well, I'm happy to let you brief it, but I will tell you that, and this may be a deal-breaker for you, on this case, I disagree with you. Your credits are all 85 percent from this point. I give you 85 percent credits – or 15 percent credits from the time that you have

9

been in custody, and once you get to prison, you are also getting those same credits.

**[Petitioner]:** How is that? How is that when it says in the guidelines that it doesn't start until you are placed in custody in state prison?

**The Court:** No.

**[Petitioner]:** It's right here. That's what I've been saying the whole time. Everything that's in the case law records, up-to-date stuff is right here. Would you like to read it?

**The Court:** If you had a misunderstanding of that, I'm sorry that you had a misunderstanding, but that's not the case. I'm prepared to bring the jury in if that's going to be a the deal-breaker. If I'm wrong, you can always – if I'm wrong you can appeal that issue of the credits. That's not – you have the right to appeal that, but I know that that's not incorrect. I know that's correct.

I will tell you right now that if you disagree with the credits, and I'm wrong, that the Appellate Court will reverse me, and I am telling you right now that even though you have waived your appellate rights, I am leaving open for you the right to appeal that issue. But I'll tell you that I'm certain of the credits, and that's what I give you. But if there is authority and I'm wrong in that, I'm telling you right now you have an absolute right to appeal that. But I'm also telling you that I know that your credits are at 15 percent from county. Otherwise, people would stay in county jail forever.

**[Petitioner]:** That's what it says. It says it's to a defendant's favor to stay in county jail.

**The Court:** Not in this case.

**[Petitioner]:** So what case is that?

**The Court:** It's 11:00 o'clock. I have the jury waiting for an hour. If it's a no, we'll go on. If you understand that if I'm wrong, you can appeal that, and I'm happy to do a resentencing if the Appellate Court tells me I'm wrong, but I want to let you know that I don't think I'm wrong.

**[Petitioner]:** All right.

**The Court:** I'm convinced that I'm right. I think [Defense Counsel] agrees, [Prosecution] agrees.

**[Petitioner]:** Okay. Well, as long as you say I can appeal that.

**The Court:** I will preserve that.

**[Petitioner]:** But I can show it right here.

10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**[Prosecution]:** That limited issue.

**The Court:** That limited issue.

No question that I would not rob you of credits that you deserve if I'm correct in what I'm advising you. Do you follow what I just said?

**[Defense Counsel]:** I think what the Judge is saying, if it's possible to give you more credits, he would be willing to do that, but the law restricts them.

**The Court:** If it's lawful, I will give them to you. If the Appellate Court says I should, I will. Is that fair enough for you?

**[Petitioner]:** Yes.

**The Court:** All right. So let's continue.

The credits are at 15 percent.

Resp. Ex. 1 at 707:22-710:13.

      Having reviewed the record, the court concludes that petitioner made his plea with the full knowledge that he would receive no more than 15 percent pre-sentence worktime credits. There is nothing in the record to demonstrate that petitioner was uninformed on the computation of credits. To the contrary, the court, the prosecution, and defense counsel all went to great lengths to clarify the issue of pre-sentence credits. The underlying record establishes that petitioner discussed the sentence in court, and agreed to plead guilty while reserving his right to appeal the length of the sentence. Just because petitioner disagreed with the computation of his term does not mean that he was not informed of his term.

      Petitioner further claims that the sentencing judge's offer to bring in the jury amounted to a "threat" sufficient to make petitioner's plea involuntary. Specifically, petitioner claims that on the eve of trial, the judge approached petitioner and defense counsel and asked "Are you gonna take [the 17-year offer] or cause [sic] we got jurors waiting." Petition at 13. This claim is without merit. The court does not see how the alleged statement amounted to a threat or was otherwise

11

1 sufficient to overcome "the exercise of [petitioner's] free judgment," as he claims.
2 Petition at 6. Rather, the trial judge was stating the obvious procedural posture of
3 the case – if petitioner did not accept the plea offer, the case would proceed to jury
4 trial. There was no wrongful coercion here. Cf. Brady, 397, U.S. at 754-55.

5 Petitioner is not entitled to federal habeas relief on his involuntary and
6 unknowing plea claim. It simply cannot be said that the state court's rejection of
7 petitioner's claim was contrary to, or an unreasonable application of, clearly
8 established federal law, or was based on an unreasonable determination of the facts.
9 See 28 U.S.C. § 2254(d).

### C. Competency to Plead

Petitioner claims that his plea was involuntary due to his depression.
Petition at 14-15. Specifically, petitioner claims that on eight of the ten days
preceding his plea, he was woken at 3:00 a.m., transported to a holding cell for the
day, and not returned to county jail until 8:30 p.m. Id. at 19. Petitioner states that
this wore him down and led him to depression such that his plea was "not willingly
[sic]." Id. The court construes petitioner's claim to assert that his plea was
involuntary because he was not competent to enter a no contest plea at the time of
the plea hearing.

The standard for competency to plead guilty is identical to the standard for
competency to stand trial. See Godinez v. Moran, 509 U.S. 389, 396-99 (1993).
That standard is whether the defendant "has sufficient present ability to consult
with his lawyer with a reasonable degree of rational understanding – and whether
he has a rational as well as factual understanding of the proceedings against him."
Boag v. Raines, 769 F.2d 1341, 1343 (9th Cir. 1985) (citing Dusky v. United
States,

//

1    362 U.S. 402, 402 (1960), and Chavez v. United States, 656 F.2d 512, 518 (9th Cir.
2    1981)). Petitioner does not meet this standard.

3    The transcript of the petitioner's plea hearing shows that he responded rationally and appropriately to the judge's questions and expressly acknowledged that he understood the charges against him, the rights he was giving up, and the consequences of his plea. See Resp. Ex. 1 at 697:17-698:7, 705:16-707:21. He further requested direct sentencing and waived his appearance at final review. See id. at 703:13-705:15, 712:21-713:24, 714:20-25. The overall record of the hearing indicates that petitioner was able to express himself clearly. He did not merely provide rote answers; as shown above, he asked several questions to clarify the computation of his sentence, indicated that he did not agree with the court's computation, and consented to it only after a colloquy with the court and with his attorney. See id. at 699:27-701:5, 707:22-710:13, 719:21-720:16. Nothing in the plea transcript evinces irrational or mentally incompetent behavior by petitioner. Cf. Boag, 769 F.2d at 1343.

Petitioner is not entitled to federal habeas relief on his claim that he was not competent to plead. It simply cannot be said that the state courts' rejection of the claim was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d).

**D. Pre-Plea Claim of Prosecutorial Misconduct/Vindictive Prosecution**

Petitioner claims prosecutorial misconduct/vindictive prosecution on the ground that the district attorney punished him for exercising his speedy trial rights by re-filing charges with enhancements that could have been brought originally. Petition at 16-17. Petitioner also claims prosecutorial misconduct/vindictive prosecution on the additional ground that the district attorney raised "the plea offer

higher and higher every court date" altogether pressuring him into accepting "an unwanted term of 17 [years]." Id.

Petitioner's guilty plea precludes federal habeas relief for the alleged pre-plea violations. As the Supreme Court put it,

> a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was [inadequate] . . . .

Tollett v. Henderson, 411 U.S. 258, 267 (1973). Put simply, a guilty plea forecloses consideration of pre-plea constitutional deprivations. Haring v. Prosise, 462 U.S. 306, 319-20 (1983). Petitioner is not entitled to federal habeas relief on his pre-plea claims of prosecutorial misconduct/vindictive prosecution.

### E. Biased Probation Report

Petitioner challenges certain statements made in the probation report submitted to the court at his August 28, 2007 final review date. Petition at 11-12. Specifically, petitioner disputes the probation officer's representation that there were no mitigating factors in petitioner's favor and claims that, to the contrary, he had presented letters of reference from his former employer and that he had completed drug programs. Id. Petitioner also disputes the probation officer's representation that petitioner failed to "show remorse" or "own up to his neglect." Id. Petitioner claims that, to the contrary, he sent numerous letters to the court offering to pay restitution and apologize to the victim. Id. The court need not reach whether or not the report included misstatements because petitioner cannot demonstrate prejudice from any such alleged misstatements.

14

On habeas review, an error is deemed "harmless" if it does not have a "substantial and injurious effect on the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). The Brecht harmless error analysis also applies to habeas review of an error with respect to sentencing; in other words, the test is whether such error had a "substantial and injurious effect" on the sentence. See Calderon v. Coleman, 525 U.S. 141, 145-47 (1998). As discussed above, the sentencing judge proceeded to direct sentencing at petitioner's plea hearing on July 25, 2007 after petitioner waived separate sentencing and waived appearance at final review. See Resp. Ex. 1 at 693, 703:13-705:15, 712:21-713:24, 714:20-25. The judge sentenced petitioner to 17 years based on the plea agreement and the record before him at that time, which did not include the probation report. Because nothing in the later-submitted probation report changed the sentence, there can be no prejudice from the alleged statements.

Petitioner is not entitled to federal habeas relief on his biased probation report claim. The state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. See 28 U.S.C. § 2254(d).

**F. Ineffective Assistance of Counsel**

Petitioner claims that he received ineffective assistance from both trial counsel and appellate counsel. The claims are without merit.

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must prove two things. First, he must establish that

counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. Id. at 687-88. Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. See id. at 697.

### 1. Pre-Plea Claims of Ineffective Assistance of Trial Counsel

Petitioner claims that his trial counsel was ineffective for: (1) failing to proceed to speedy trial by withdrawing petitioner's time waiver; and (2) bringing a motion to dismiss for vindictive prosecution, which was denied, allegedly causing the prosecution to increase its plea offer. Petition at 6, 18-20. These claims fail.

Petitioner's claim that trial counsel should have withdrawn his time waiver is effectively a claim for denial of the Sixth Amendment right to a speedy trial. As discussed above, a defendant who pleads guilty cannot later raise in habeas corpus proceedings independent claims relating to the deprivation of constitutional rights that occurred before the plea of guilty. See Haring v. Prosise, 462 U.S. 306, 319-20 (1983) (guilty plea forecloses consideration of pre-plea constitutional deprivations). Here, the alleged failure by counsel to withdraw petitioner's time waiver occurred prior to petitioner's entry of his plea. Therefore, upon entering the plea agreement, petitioner waived the right to raise this issue in his federal habeas petition as a basis for a claim of ineffective assistance of counsel. See Moran v. Godinez, 57 F.3d 690, 700 (9th Cir. 1994) (holding that petitioner's contention that his attorneys were ineffective because they failed to attempt to prevent the use of his confession was

16

the assertion of a pre-plea constitutional violation, which was waived by petitioner's guilty plea).

Petitioner's claim that counsel should not have brought the motion to dismiss for vindictive prosecution is also foreclosed by his guilty plea. But even if it was not, there is nothing in the record to show that the district attorney increased her plea offer as a result of this motion. The record instead shows that, trial counsel brought the motion to help petitioner's case. See Resp. Ex. 1 at 596-603. Petitioner has not shown deficient performance or prejudice under Strickland.

### 2. Failure to Inform of Plea Offers

Petitioner claims that trial counsel failed to inform him of various plea offers made by the prosecution. Specifically, petitioner alleges that defense counsel MacDougall failed to advise him of the prosecution's December 19, 2006 offer of 8 years. Petition at 17, 21. Petitioner also alleges that his later defense counsel Lang failed to advise him of a 13-year offer made on July 4, 2007 and a 15-year offer made on July 10, 2007. Petition at 8. This claim lacks merit.

There is no evidence in the record that these alleged offers were made by the prosecution. Nor is there any indication that if there were an earlier plea offer and counsel failed to inform petitioner, that there is a reasonable probability petitioner would have accepted the offer. See Jones v. Wood, 114 F.3d 1002, 1012 (9th Cir. 1997) (where petitioner alleged counsel failed to inform him of prosecution's plea bargain, petitioner must demonstrate that he would have accepted the offer). As noted above, petitioner may not collaterally attack his plea's validity merely because he made what turned out, in retrospect, to be a poor deal. Bradshaw v. Stumpf, 545 U.S. 175, 186 (2005).

Petitioner's after-the-fact contention that he would have accepted these alleged offers is belied by the record. Specifically, petitioner sent a letter to the

17

court on or around March 19, 2007 stating "I just can't see myself spending the next 7 years in jail." Resp. Ex. 1 at 511. Petitioner also states in his petition that on July 22, 2007, he proposed 11 or 12 years. Petition at 19. These admissions, along with petitioner's unwaivering claims of prosecutorial misconduct, make it unlikely that at the time of the alleged proffers petitioner would have agreed to 8 to 15 years.

Petitioner is not entitled to federal habeas relief on this claim. It simply cannot be said that the state courts' rejection of the claim was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d).

### 3.     Ineffective Assistance of Appellate Counsel

Petitioner claims that he was denied effective assistance of appellate counsel because his appellate counsel failed to argue the claims raised above. Not so.

The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant the effective assistance of counsel on his first appeal as of right. Evitts v. Lucey, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of appellate counsel are reviewed according to the standard set out in Strickland, i.e., petitioner must show deficient performance and prejudice. Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989). If the substantive basis of an ineffective assistance claim lacks merit, petitioner has not been prejudiced. Butcher v. Marquez, 758 F.2d 373, 378 (9th Cir. 1985) ("[petitioner] claims as well that appellate counsel's failure to argue the issues presented above constituted ineffective assistance of counsel. In view of the fact that those claims have been shown to be invalid [petitioner] would not have gained anything by raising them.").

Here, there is no indication that appellate counsel failed to raise nonfrivolous grounds on appeal. The only issues petitioner claims should have been brought on direct appeal are those raised in this petition. But as addressed above, the

underlying bases for petitioner's claims lack merit, and consequently, appellate counsel cannot be said to have been ineffective in failing to raise them. See id.

Petitioner is not entitled to federal habeas relief on his claim of ineffective assistance of appellate counsel. It simply cannot be said that the state courts' denial of petitioner's claim was contrary to or an unreasonable application of federal law, or that it was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d).

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, a certificate of appealability (COA) under 28 U.S.C. § 2253(c) is DENIED because petitioner has not demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

The clerk shall enter judgment in favor of respondent and close the file.

SO ORDERED.

DATED: Dec. 20, 2010

CHARLES R. BREYER
United States District Judge

G:\PRO-SE\CRB\HC.09\Hands, A1.denyhc.wpd